IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
(Northern Division)
No.:  2:24-cv-00026-D-RN

JOYCE SYKES FITCH, MARK MIXON, )
SHERRYREED ROBINSON, and )
ADRIANA BLAKEMAN, individually and )
as elected officers and members of THE )
CONCERNED CITIZENS OF TYRRELL )
COUNTY, )
                 )
       Plaintiffs, )
                 )
v. )           **MEMORANDUM OF LAW**
                 )           **IN SUPPORT OF MOTION**
TYRRELL COUNTY, )           **TO DISMISS AMENDED**
                 **)**           **COMPLAINT**
       Defendant. )
_____

## <u>Nature of the Case</u>

Plaintiffs (four individuals and a civic group) sued Tyrrell County to challenge a panel on a Confederate monument outside the courthouse. That panel reads, "In Appreciation of our Faithful Slaves." The monument has stood since 1902. Plaintiffs allege that by allowing the panel to remain on the monument, Tyrrell County is liable for: (1) a 42 U.S.C. § 1983 fourteenth amendment equal protection violation, and (2) a 42 U.S.C. § 1982 violation.

To prove either claim, Plaintiffs must show that Tyrrell County acted with discriminatory intent when it declined Plaintiffs' request to remove the panel. The pleaded allegations, however, reveal that the county cannot remove or relocate the panel due to a North Carolina monument protection law.

The North Carolina Court of Appeals considered a similar lawsuit earlier this year in *North Carolina State Conference of National Association for the Advancement of Colored People v. Alamance County*, 900 S.E.2d 224, 229 (N.C. Ct. App. 2024). In a published decision,

the court held that the monument protection law prohibits local governments from removing Confederate monuments. From that holding, the court ruled that the plaintiffs' equal protection claim failed because the plaintiffs could not show that Alamance County acted with discriminatory intent when, in fact, the county was restricted by state law.

*** 

The North Carolina General Assembly has said that local governments cannot remove or relocate their Confederate monuments. It left no room for local governments to remove their monuments in part either.

Whether the legislature's policy choice is wise is up to the voters. After all, "offensive speech by the government is cured at the ballot box, not in the courtroom." *Penkoski v. Bowser*, 548 F. Supp. 3d 12, 21 (D.D.C. 2021). Tyrrell County should not be called to answer for an alleged equal protection violation and a federal property rights violation when it has done nothing more than follow state law.

As a result, Plaintiffs' lawsuit should be dismissed.

## **Pleaded Allegations**

### The Parties

Tyrrell County owns a Confederate monument outside its county courthouse. (DE 19, ¶ 1) A panel on the monument reads, "In Appreciation of Our Faithful Slaves." (*Id.*)

Plaintiff The Concerned Citizens of Tyrrell County is a civic organization opposed to the panel on the monument. (DE 19, ¶ 7) The individual plaintiffs have spoken publicly against the panel on the monument. (*Id.*, ¶¶ 8-11)

<u>The Tyrrell County Monument Association erected the monument in 1902</u>

In 1902, the Tyrrell County Monument Association, a group formed by Confederate Officer and Tyrrell County native William Fessenden Beasley, gifted the monument to the county. (DE 19, ¶¶ 13, 18-19) The monument depicts a Confederate soldier standing atop a pedestal. (*Id.*, ¶ 14) One panel on the monument reads, "lovingly dedicate[d]" to "the memory of Mary Alexander Beasley, who was born in Tyrrell County . . . [and] was the mother of Lt. Colonel W.F. Beasley." (*Id.*, ¶ 21) Another panel bears tribute to the "Confederate Cause" and reads, "In Appreciation of Our Faithful Slaves." (*Id.*, ¶ 14) The monument was among the earliest Confederate monuments erected in North Carolina. (*Id.*, ¶ 25)

<u>Plaintiffs object to the monument</u>

Plaintiffs have called for the county to remove the panel from the monument. (DE 19, ¶¶ 34-36) They allege that third parties have intimidated them due to their advocacy. (*Id.*, ¶¶ 37-39) and that the county's "reaction to protests and counter-protests has created a risk that [Plaintiffs] will face physical intimidation and danger when and if they speak against the [panel on the monument]." (*Id.*, ¶ 42)

<u>The General Assembly passed the monument protection statute</u>

In 2015, the North Carolina General Assembly passed a monument protection statute, codified at N.C. Gen. Stat. § 100-2.1. (DE 19, ¶ 27) Plaintiffs allege that the statute's aim is to prevent state and local actors from removing Confederate monuments. (*Id.*)

Plaintiffs assert that in 2022, the North Carolina Supreme Court in *United Daughters of the Confederacy v. City of Winston-Salem by & through Joines* held that N.C. Gen. Stat. §

100-2.1 only applies to monuments owned by the State, and that it does not apply to monuments owned by counties. (DE 19, ¶¶ 28-30)[1]

Plaintiffs' alleged Tyrrell County is liable under 42 U.S.C. §§ 1982 and 1983

Plaintiffs allege two claims for relief in their amended complaint. (DE 19)

The first claim is for racially discriminatory government speech contrary to the fourteenth amendment's equal protection clause and brought under 42 U.S.C. § 1983. (DE 19, ¶¶ 44-91) Plaintiffs contend that the monument's panel amounts to government speech, that the equal protection clause prohibits government speech that expresses a racially discriminatory message, that the panel's message is racially discriminatory. (*Id.*, ¶¶ 45-79) Even so, Plaintiffs recognize that to plead an equal protection violation, they must show discriminatory intent by the county. (*Id.*, ¶ 69) On this point, they allege that persons associated with the monument's dedication in 1902 acted with racial animus when they erected the monument and the messaging on the panels. (*Id.*, ¶¶ 71-76)

The second claim is that Tyrrell County has violated Plaintiffs' right to use public property under 42 U.S.C. § 1982. (DE 19, ¶¶ 92-105) Plaintiffs contend that their ability to use the county courthouse on equal terms as white people has been violated because the panel on the monument displays a discriminatory message. (*Id.*) Plaintiffs then plead several examples where the panel on the monument has denied them equal access to the courthouse property. (*Id.*, ¶¶ 98, 101-104)

## Argument

The issue on a motion to dismiss is whether the complaint alleges facts that, if proven, state a claim for relief. F. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009);

---

[1] That legal contention is incorrect, as described in the Court's discussion and holding in *United Daughters of the Confederacy,* 881 S.E.2d 32, 54–55 (N.C. 2022), as well as the discussion and holding in *Alamance County*, 900 S.E.2d at 229.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court accepts plausible factual allegations as true. *Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP,* 213 F.3d 175, 180 (4th Cir. 2000). Even so, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

***

The fourteenth amendment's equal protection clause protects against race-based discrimination. *See e.g., Washington v. Davis*, 426 U.S. 229, 242 (1976). A plaintiff must prove discriminatory intent to sustain an equal protection violation. *See e.g., City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 194 (2003).

In a similar vein, 42 U.S.C. § 1982 provides that "[all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Like with a § 1983 claim, a plaintiff must show prove discriminatory intent to make out claim for a § 1982 violation. *City of Memphis v. Greene*, 451 U.S. 100, 135 (1981) (J., White concurring); *Phillips v. D.R. Horton, Inc.,* No. CV GLR-19-2505, 2020 WL 5593039, at *6 (D. Md. Sept. 18, 2020) (citing *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 195 (2003).[2]

Here, Plaintiffs' pleaded allegations show that the reason Tyrrell County has not removed the panel from the monument is because it is restricted by the North Carolina monument protection law, not because it intends to discriminate against Plaintiffs. (DE 19,

---

[2] *See also Brown v. Winman*, No. 5:15-CV-59-BO, 2015 WL 5837471, at *1 (E.D.N.C. Oct. 6, 2015).

¶¶ 27-30) In turn, Plaintiffs' amended complaint does not state a claim upon which relief can be granted.

## I.   Plaintiffs' equal protection claim does not state a claim for relief because the pleaded allegations do not show discriminatory intent

In July 2015, North Carolina enacted the "Cultural History Artifact Management and Patriotism Act of 2015," commonly referred to as the monument protection statute or the monument protection law. *See* 2015 North Carolina Laws S.L. 2015-170 (S.B. 22) (codified as amended at N.C. Gen. Stat. § 100-2.1). The law restricts an actor's ability to remove a monument or an "object of remembrance," defined as a "monument, memorial, plaque, statue, marker, or display of a permanent character that commemorates an event, a person, or military service that is part of North Carolina's history." N.C. Gen. Stat. § 100-2.1(b).

The statute includes three paragraphs.

Paragraph (a) provides that "a monument, memorial, or work of art owned by the State may not be removed, relocated, or altered in any way without the approval of the North Carolina Historical Commission." N.C. Gen. Stat. § 100-2.1(a).

Paragraph (b) provides that "[a]n object of remembrance *located on public property may not be permanently removed* and may only be relocated, whether temporarily or permanently, under the circumstances listed in this subsection and subject to the limitations in this subsection." N.C. Gen. Stat. § 100-2.1(b) (emphasis added). The limitations in the subsection provide that a monument may be moved (1) when the state or a subdivision requires "appropriate measures" to preserve the object, and (2) when necessary for construction, renovation, or reconfiguration. *Id.*

Paragraph (c) provides that the statute does not apply to certain markers[3], none of which apply to this case.

---

[3] Those four markers are:

A. <u>The North Carolina monument protection statute precludes local governments from removing Confederate monuments</u>

Shortly after its passage, legal commentators concluded that the monument protection law was designed[4] to prevent local boards from removing Confederate monuments. *See e.g.* Malik Edwards, PhD, JD, <u>Silent Sam Speaks</u>, 71 Wash. U. J.L. & Pol'y 59, 69–70 (2023); Kasi E. Wahlers, <u>North Carolina's Heritage Protection Act: Cementing Confederate Monuments in North Carolina's Landscape</u>, 94 N.C. L. Rev. 2176, 2183-84 (2016).

Plaintiffs, nonetheless, allege that the North Carolina Supreme Court held that the monument protection statute does not apply to county-owned monuments. (DE 19, ¶ 28-30 citing *United Daughters*, 881 S.E.2d 32 (N.C. 2022)). That legal contention is mistaken.

In *United Daughters*, a private group bought the former county courthouse and adjacent grounds. 881 S.E.2d at 37. A confederate monument was situated on the grounds. *Id*. The private group moved the monument to an off-site location. *Id*. The plaintiffs then sued

---

(1) Highway markers set up by the Board of Transportation in cooperation with the Department of Environmental Quality and the Department of Natural and Cultural Resources as provided by Chapter 197 of the Public Laws of 1935.

(2) An object of remembrance owned by a private party that is located on public property and that is the subject of a legal agreement between the private party and the State or a political subdivision of the State governing the removal or relocation of the object.

(3) An object of remembrance for which a building inspector or similar official has determined poses a threat to public safety because of an unsafe or dangerous condition.

(4) An object of remembrance commemorating law enforcement officers of the Wildlife Resources Commission killed in the line of duty.

[4] This intent is shown by the act's legislative history. For example, one senator proposed an amendment to specify that the bill does not apply to monuments on city or county property, but that amendment failed. Wahlers, 94 N.C. L. Rev. at 2189. And Governor McCrory, after he signed bill, acknowledged that the law left no room for "local decision making." *Id*. at 2190.

the private group under various theories, including a violation of the monument protection act. *Id*. at 50. In the end, the Supreme Court affirmed dismissal because the plaintiffs' lacked standing. *Id*. at 60. On its way to this result, the Court considered whether the monument protection act applied at all given that the monument was on private property. *See generally id*.

At first, the plaintiffs alleged that the private group violated subsection (b) because the monument was "situated on public property." *United Daughters*, 881 S.E.2d at 51. The Court rejected this argument for the simple reason that once the county sold the property to a private group, the monument was no longer on "public property." *Id*. at 52-54. For this reason, the Court concluded that subsection "(b) has no application to this case." *Id*. at 54.

Next, the Court considered the plaintiffs' argument that property owned by a local government is also owned by the state, such that (a) could provide the plaintiffs with an alternative avenue for relief. *United Daughters*, 881 S.E.2d at 54-55. The Court corrected this misconception, and pointed out that the local governments can own property independent of the state. *Id*. For that reason, the Court concluded that (a) had no application "given the absence of any allegation in the amended complaint that the monument is 'owned by the State.'" *Id*. at 54.

***

The Court in *United Daughters* never said that the monument protection law only applies to state-owned property. (*Compare* 881 S.E.2d at 54-55 *with* DE 19, ¶¶ 28-30) The quotes from *United Daughters* cited in Plaintiffs' amended complaint – that "the North Carolina Constitution authorizes counties and municipalities to own property independently of the State," and that "if [a] County own[s] [a] monument, that fact would not convert the monument into State property subject to N.C.G.S. § 100-2.1(a)" – reflect the Court's

explanation for why the plaintiffs in that case could not use subsection (a) to allege that county owned property is also state owned property. *United Daughters*, 881 S.E.2d at 54-55.

To put a finer point on it, the Court in *United Daughters* did not hold that "public property" in (b) means state owned property. Instead, it pointed out that subsection (a) and subsection (b) have different applications. Subsection (a) applies to state-owned property and subsection (b) applies to locally owned property.

Earlier this year, and following *United Daughters*, the North Carolina Court of Appeals left no doubt as to the statute's application and held that N.C. Gen. Stat. § 100-2.1(b) prohibits a county from removing a monument. *Alamance County*, 900 S.E.2d 224.

B.     Tyrrell County's need to follow the monument protection statute does not show discriminatory intent needed to sustain an equal protection claim

*Alamance County* is a near-perfect analog for this case. There, the plaintiffs sued Alamance County and its commissioners to remove a Confederate a monument outside the Alamance County courthouse. 900 S.E.2d at 227. The plaintiffs alleged that the defendants' maintenance and protection of the monument was unconstitutional in several respects. *Id.*

The North Carolina Court of Appeals took a two-fold approach to the case. *Alamance County*, 900 S.E.2d at 227. First, it held that the defendants had no power to remove the statute under § 100-2.1(b). *Id.* at 227-28. The court held that the monument was on "public property" (because county property is public property) and that the monument was an "object of remembrance" (because it commemorated military service that is part of North Carolina's history). *Id.* The court then noted that the two limitations in subsection (b) did not apply and that the exceptions in subsection (c) did not apply. *Id.* As a result, it concluded that "the General Assembly has not clothed [the defendants] with authority to remove the Monument under the facts of this case." *Id.* at 228.

After it concluded that the defendants lacked authority to remove the monument, the court considered whether the defendants could be liable for an equal protection violation, despite their inability to act. *Alamance Co.*, 900 S.E.2d at 229. To sustain that claim, the plaintiffs needed to prove discriminatory intent. *Id*. (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). The court held that the plaintiffs could not meet their burden. *Id*. "Even if some of the defendants had a discriminatory intent," the court wrote, "that intent was not the reason that the monument has remained in front of the courthouse—the monument has remained in place *because the monument protection law forbids [the defendants] from moving the monument.*" *Id*. (emphasis in original) (capitalization omitted).

The court went on to state that even if the defendants misunderstood the statute, that misunderstanding could not show discriminatory intent either. *Alamance County*, 900 S.E.2d at 229. "Regardless of some commission members' comments or misunderstandings of their legal ability to move the monument," the court wrote, "the rule of law does not change. At all times, the monument protection law has required the county to leave the monument in its current place. Defendants' hands are tied—even if they wanted to move the monument, they could not." *Alamance County*, 900 S.E.2d at 229. (capitalization omitted).

C.     Plaintiffs' pleaded allegations do not show discriminatory intent

Plaintiffs' allegations here are a near-match with the issues in *Alamance County*. As in that case, Plaintiffs do not have a cognizable equal protection claim against Tyrrell County because they cannot show discriminatory intent.

Plaintiffs allege in their amended complaint that the General Assembly passed the monument protection statute to prevent actors from removing Confederate monuments. (DE 19, ¶ 28) *Alamance County* confirms that, indeed, Tyrrell County cannot move the monument.

900 S.E.2d at 228-29. From there, *Alamance County* teaches that a local government that is bound by state law cannot act with discriminatory intent when it simply follows the law. *Id.*

Other federal courts have similarly concluded that a defendant's desire to follow state law or controlling regulations does not show discriminatory intent. *Peters v. City of Shreveport*, 818 F.2d 1148, 1154 (5th Cir. 1987)[5] (finding no equal protection violation for alleged gender-based pay disparity because a statute mandated certain pay for certain positions and "compliance with the state statute was the primary motivating factor in the wage differential …."); *Idaho Aids Found., Inc. v. Idaho Hous. & Fin. Ass'n*, 422 F. Supp 2d 1193, 1202–03 (D. Idaho 2006) (the defendant's actions were motivated by the need to comply with HUD orders, not to discriminate); *Brady v. Oscoda Area Pub. Sch.,* No. 09-10176-BC, 2010 WL 11541858, at *12 (E.D. Mich. Apr. 22, 2010) (unpublished) (educator's comments about the need to comply with state law regarding special education placement did not show discriminatory intent).

In their amended complaint, Plaintiffs swap their focus from the monument itself to one panel on the monument that displays the "In Appreciation of Our Faithful Slaves," text. (*Compare* DE 1 *with* DE 19) This shift in focus does not change the intent analysis. The monument protection act does not give local governments the authority to remove a monument, in part. Instead, the statute has a broad application and covers, "monument[s], memorial[s], plaque[s], statue[s], marker[s], or display[s] of a permanent character." N.C. Gen. Stat. § 100-2.1(b). Plus, the act takes away all local decision making for removing or relocating monuments. *See Alamance Co.*, 900 S.E.2d at 229. Added up, there is nothing in

---

[5] *Abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), which itself was later superseded by statute, as recognized by *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020).

the act that would suggest that Tyrrell County has the power to remove one panel from the monument.

But even if the monument protection act, in fact, does allow a local government to dismantle a monument in part, Tyrrell County did not act with discriminatory intent here for the simple reason that the only authority to date on this question says that counties cannot remove or relocate their Confederate monuments at all. *Alamance County,* 900 S.E.2d at 229. If a future court says otherwise, then with hindsight's benefit, Tyrrell County misunderstood the law. Yet *Alamance County* made a specific holding that a local governments' misunderstanding about the statute does not show discriminatory intent. *Id.*

\*\*\*

In the end, Tyrrell County is restricted by a statute they did not enact, just like the defendants in *Alamance County*. Tyrrell County's need to follow state law does not show discriminatory intent. For that reason alone, plaintiffs' suit should be dismissed.

D.  Plaintiffs' suggestion that N.C. Gen. Stat. § 100-2.1 "serves to effectuate discriminatory actions" does not state a claim for relief

Plaintiffs allege that the equal protection clause "renders illegitimate government actions that are rooted in archaic and stereotypic notions about protected groups" and that the clause "invalidates the application of laws that might otherwise serve to effectuate discriminatory state action." (DE 19, ¶ 52) (internal quotations omitted) The footnote to this allegation cites *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724–25 (1982); *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175–76 (1972); *Reed v. Reed*, 404 U.S. 71, 74 (1971); *Glona v. Am. Guarantee & Liab. Ins. Co.*, 391 U.S. 73, 75–76 (1968).

It is unclear what Plaintiffs intend with this allegation. The cases they cite have no application. In each case, the Supreme Court dealt with either affirmative policies or statutes that treated persons differently based on certain characteristics. *Hogan*, 458 U.S. at 724-25

(university policy refused men admission to nursing program); *Weber*, 406 U.S. at 175-76 (workers' compensation statute provided different death benefits for illegitimate children violated the equal protection clause); *Reed*, 404 U.S. at 74 (statute that said males are preferred estate administrators over females violated the equal protection clause); *Glona*, 391 U.S. at 75-76 (statute that withheld wrongful death benefits to mother because deceased child was born out of wedlock violated equal protection clause).

Tyrrell County's decision to follow state law does not implicate any suspect classification. And if Plaintiffs' mean to allege that the monument protection act itself is invalid as applied, any such contention is misguided for at least two reasons.

First, Plaintiffs do not allege that the General Assembly acted with discriminatory intent when it passed the monument protection law. Nor would any such allegation be straight face. The bill itself is described as an act "to provide for the protection of monuments and memorials commemorating events, persons, and military service in North Carolina history." 2015 North Carolina Laws S.L. 2015-170 (S.B. 22). Bill supporters explained that the statute's aim is to preserve North Carolina's history, both the good and the bad. Wahler, 94 N.C. L. Rev. at 2183-84.[6] The best Plaintiffs could allege is that the monument protection law has a discriminatory effect. That is not enough to show an equal protection violation though. *Davis*, 426 U.S. at 242.

Second, and more to the point, Plaintiffs do not allege that the monument protection law is unconstitutional and that the law should be invalidated because it results in Tyrrell

---

[6] At least one advocate for the law explained that

> History needs to be retained. You don't know what you are without your history .... We need to face it and, like it or not like it, it is what it is, and we shouldn't be trying to change it. And I don't think the government has the right to change what history is.

Wahler, 94 N.C. L. Rev. at 2183-84.

County violating their constitutional rights. (*See generally* DE 19) Plaintiffs, instead, chose a different tact. They allege that the monument protection act does not apply to Tyrrell County at all, and that the county acted with discriminatory intent when it chose to follow a law that does not apply to it. (*See generally id*) Those allegations do not work, for the reasons discussed above. But Plaintiffs' citation to *Weber* and its progeny is off base when Plaintiffs do not allege that the equal protection act invalidates Tyrrell County's need to follow the monument protection act in the first place.

## II. Plaintiffs' alleged 42 U.S.C. § 1982 violation does not state a claim for relief because the pleaded allegations do not show discriminatory intent

A plaintiff must show prove discriminatory intent to state a claim for relief under 42 U.S.C. § 1982. *Greene*, 451 U.S. at 135 (1981) (J., White concurring); *Phillips,* No. CV GLR-19-2505, 2020 WL 5593039, at \*6 (D. Md. Sept. 18, 2020) (citing *Cuyahoga Falls,* 538 U.S. at 195); *Winman*, No. 5:15-CV-59-BO, 2015 WL 5837471, at \*1.

Plaintiffs 42 U.S.C. § 1982 claim fails as pleaded for two reasons.

First, Plaintiffs do not even allege in their § 1982 claim that Tyrrell County acted with discriminatory intent. (DE 19, ¶¶ 92-105) The term "intent" appears nowhere in the amended complaint's allegations that the county is liable under this statute. The claim should be dismissed for that reason alone. *See e.g., Frazier v. Angel Med. Ctr.,* 308 F. Supp. 2d 671, 678 (W.D.N.C. 2004) (motion to dismiss should be granted when plaintiff does not allege elements needed to sustain claim for relief).

Second, and as discussed *supra* I., Tyrrell County must follow North Carolina state law, and its decision to do so does not show discriminatory intent. *Alamance County,* 900 S.E.2d at 229. As a result, Plaintiffs 42 U.S.C. § 1982 claim fails for the same fundamental reason that the equal protection claim fails.

### III. **Tyrrell County has legislative immunity from plaintiffs' suit.**

Local officials enjoy absolute immunity from suit for legislative functions performed in office. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). The United States Supreme Court has recognized that such absolute immunity finds support in both history and reason. *Id*. at 52. Local legislative decisionmaking "should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id*. More than that, part-time local legislators should not be subject to the time and energy needed to defend a lawsuit because this risk will deter local elected service, "where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Id*.

Legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (internal citations omitted). Whether an act is legislative depends on the act itself, not the local official's motive or intent. *Id*. Legislative actions are those that reflect "a discretionary, policymaking decision." *Id*. at 55.

Here, Plaintiffs allege they have asked Tyrrell County to remove the panel on the monument, and the county, in its discretion, has declined. (DE 19, ¶¶ 34-36) Tyrrell County's response to Plaintiffs' request is a legislative action. The only arguable reason the county would have the power to remove the panel on the monument is because the county has local legislative powers. A policy making decision not to act is subject to legislative immunity. As a result, Tyrrell County has legislative immunity for its decision not to act.

**Conclusion**

The North Carolina General Assembly has said that counties cannot remove their Confederate monuments. The North Carolina Court of Appeals has ruled that county commissioners are bound by this statute, and that commissioners who are bound by this statute are not motivated by a discriminatory intent.

Again, whether the monument protection statute is good policy is a legislative choice. But Tyrrell County should not be subject to liability based on its decision to follow state law. Plaintiffs' lawsuit should be dismissed.

This the 9th day of October, 2024.

CRANFILL SUMNER LLP

BY:    /s/ Steven A. Bader
STEVEN A. BADER
State Bar No. 55931
E-mail: sbader@cshlaw.com
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919-828-5100

PATRICK H. FLANAGAN
N.C. State Bar No. 17407
Email: phf@cshlaw.com
Post Office Box 30787
Charlotte, NC 28230
Telephone: (704) 332-8300

*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I electronically filed the foregoing *Memorandum of Law in Support of Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to counsel of record:

Jaelyn D. Miller
Ian M. Mance
Emancipate NC
P.O. Box 309
Durham,NC  27702
Email:  jaelyn@emancipatenc.org
Email:  ian@emancipatenc.org
*Attorneys for Plaintiff*

CRANFILL SUMNER LLP

BY:     /s/ Steven A. Bader
        STEVEN A. BADER
        N.C. State Bar No. 55931
        E-mail: sbader@cshlaw.com
        Post Office Box 27808
        Raleigh, North Carolina 27611-7808
        Telephone:  919-828-5100

        PATRICK H. FLANAGAN
        N.C. State Bar No. 17407
        Email: phf@cshlaw.com
        Post Office Box 30787
        Charlotte, NC 28230
        Telephone: (704) 332-8300

        *Attorneys for Defendant*