IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
(Northern Division)
No.: 2:24-cv-00026-D-RN

JOYCE SYKES FITCH, MARK MIXON, )
SHERRYREED ROBINSON, and )
ADRIANA BLAKEMAN, individually and )
as elected officers and members of THE )
CONCERNED CITIZENS OF TYRRELL )
COUNTY, )
)
    Plaintiffs, )
)
v. )    **REPLY BRIEF**
)    **IN SUPPORT OF**
)    **MOTION TO DISMISS**
TYRRELL COUNTY, )    **AMENDED COMPLAINT**
)
    Defendant. )

## Reply Summary

Plaintiffs sued Tyrrell County to remove a panel on a Confederate monument. They asserted a 42 U.S.C. § 1983 fourteenth amendment equal protection violation, and a 42 U.S.C. § 1982 violation. To sustain either claim, Plaintiffs must prove that Tyrrell County acted with discriminatory intent[1] when it declined Plaintiffs' request that it remove the panel.

Tyrrell County moved to dismiss because the pleaded allegations show that the county is not motivated by discriminatory intent. Instead, the county is restricted by a North

---

[1] Plaintiffs take issue with Tyrrell County's citation to Justice White's concurrence in *City of Memphis v. Greene*, 451 U.S. 100, 135 (1981), for the rule that a claim brought under 42 U.S.C. § 1982 requires proof that a defendant acted with discriminatory intent. (DE 35. p 14) Even so, Plaintiffs acknowledge that Supreme Court precedent since *Greene* suggests discriminatory intent is needed. *Shaare Tefile Congregation v. Cobb*, 481 U.S. 615, 616 (1987). Plus, federal district courts, including this Court, have ruled that discriminatory intent is required to prove a § 1982 claim. *Brown v. Winman*, No. 5:15-CV-59-BO, 2015 WL 5837471, at *1 (E.D.N.C. Oct. 6, 2015).

Carolina state law that says local authorities cannot remove or relocate Confederate monuments.

Plaintiffs try to have it both ways in response to the motion to dismiss. On the one hand, they argue that the monument protection law is irrelevant to whether the county acted with discriminatory intent. This argument is refuted by Plaintiffs' own pleadings. They allege that other local governments have removed their monuments, even though the law was enacted in 2015 to "prevent[] their removal." (DE 19, ¶¶ 27, 28) Those allegations, by their very nature, call into question whether Tyrrell County acted with discriminatory intent when it followed state law.

Then, on the other hand, Plaintiffs argue that even if Tyrrell County is restricted by the monument protection law, it can still be liable for an equal protection violation even if the law is valid. Yet, in a poignant twist, the only cases Plaintiffs cite to support this argument are cases where a plaintiff challenged a state statute on equal protection grounds.

Plaintiffs cannot have it both ways. And they cannot avoid the monument protection law and its undeniable impact on Tyrrell County's decisionmaking. The county must follow state law, no matter what other counties have done. *See N. Carolina State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Alamance Cnty.* 900 S.E.2d 224, 229 (N.C. Ct. App. 2024). There are no authorities that say a local government acts with discriminatory intent, such that it is liable for a constitutional violation, when it follows a legitimate state law.

Whether the monument protection law is good policy is a decision for elected lawmakers in Raleigh. Tyrrell County, however, should not be subject to liability under federal law for complying with a state statute.

This Court should grant Tyrrell County's motion for relief and dismiss Plaintiffs' amended complaint with prejudice.

## Argument

**I.    Tyrrell County is restricted by the monument protection law.**

Plaintiffs argue that this Court should bypass the monument protection law in ruling on the motion to dismiss. (DE 24, pp. 7-10) Yet Plaintiffs' arguments on this point show that the law is front and center to this case.

At first, Plaintiffs contend that paragraphs 27-30 in the amended complaint, (which allege that the legislature passed the monument protection law to prevent local governments from removing their monuments), "are included to illustrate that the county could remove the monument." (DE 24, p. 8) If that is the case, then the pleaded allegations raise the question of whether Tyrrell County, indeed, can remove the monument. And, as Tyrrell County briefed in its motion to dismiss, the North Carolina Court of Appeals has held that local governments cannot remove their monuments under the act. (DE 21, pp. 7-10) By extension, the court has held that counties do not act with discriminatory intent when they are bound to follow valid state law.

From there, Plaintiffs argue that the statute does not apply because they are asking the county to cover up the monument placard, not remove or relocate it. (DE 24 at p 8) This position is problematic on at least two levels. For one thing, the monument protection law leaves no room for local control. *See generally Alamance Co.,* 900 S.E.2d at 229.[2] There is no support for the idea that local governments can skirt the law by "covering up" monuments that the General Assembly says must be protected.

More to the point, even if Plaintiffs' reading of the law is correct, discriminatory intent cannot be established with allegations that a county misunderstood how the monument

---

[2] See also Malik Edwards, PhD, JD, Silent Sam Speaks, 71 Wash. U. J.L. & Pol'y 59, 69–70 (2023); Kasi E. Wahlers, North Carolina's Heritage Protection Act: Cementing Confederate Monuments in North Carolina's Landscape, 94 N.C. L. Rev. 2176, 2183-84 (2016).

protection law applied. In *Alamance County*, for instance, certain commissioners misconstrued whether the monument protection law controlled their actions. 900 S.E.2d at 229. This misunderstanding did not change the discriminatory intent analysis. *Id*. "Regardless of some commission members' comments or misunderstandings of their legal ability to move the Monument," the North Carolina Court of Appeals' wrote, "the rule of law does not change. At all times, the Monument Protection Law has required the County to leave the Monument in its current place. Defendants' hands are tied—even if they wanted to move the Monument, they could not." *Id*.

On that point, Plaintiffs' efforts to distinguish *Alamance County* are ineffective. For starters, Plaintiffs point out that *Alamance County* involved an equal protection claim brought under the North Carolina constitution, not the federal constitution. That is true. But discriminatory intent is needed to sustain an equal protection claim in both instances. *See e.g., McCallum v. N. Carolina Co-op. Extension Serv. of N.C. State Univ.,* 142 N.C. App. 48, 55, 542 S.E.2d 227, 233 (2001). Plaintiffs also note that the plaintiffs in *Alamance County* brought an as-applied challenge to the monument protection law itself, while Plaintiffs have not made that claim here. That is also true. But it is irrelevant. Tyrrell County cited *Alamance County* because it teaches that (1) a county board must follow the monument protection law and (2) a county board's decision to follow state law does not show discriminatory intent. 900 S.E.2d at 228-29. The fact that the opinion also addressed an as-applied challenge does not compromise the equal protection holding or its place in this case.

*Alamance County* is the closest analog to the facts at issue here, and its analysis is sound and tracks with federal equal protection precedent. Plaintiffs have offered no meaningful legal or factual distinctions that compel a different result here.

## II. The equal protection cases cited by Plaintiffs do not show discriminatory intent by Tyrrell County.

Plaintiffs cite assorted equal protection cases that they argue "reject the idea" that "a local government that is bound by state law cannot act with discriminatory intent [sufficient to support a federal equal protection claim] when it simply follows the law." (DE 24, p. 12) The cases cited by Plaintiffs are factually and legally distinct from this case.

Most cases cited by Plaintiffs involve an equal protection challenge to a state law. *See e.g., Hunter v. Underwood*, 471 U.S. 222 (1985) (striking down a portion of the Alabama state constitution that disenfranchised certain persons from voting); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (striking down university's single sex admission policy on equal protection grounds); *Vill. of Arlington Heights, v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) (considering whether zoning ordinance that precluded certain persons from living in a neighborhood violated the equal protection clause); *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164 (1972) (holding state statute that denied workers' compensation benefits to illegitimate children violated the equal protection clause); *Reed v. Reed*, 404 U.S. 71, 74 (1971) (holding state statute that said males are preferred estate administrators over females violated the equal protection clause); *Glona v. Am. Guarantee & Liab. Ins. Co.*, 391 U.S. 73, 75–76 (1968) (holding state statute that withheld wrongful death benefits to mother because deceased child was born out of wedlock violated equal protection clause); *Loving v. Virginia*, 388 U.S. 1 (1967) (striking down Virginia state law that restricted interracial marriage); *Anderson v. Martin*, 375 U.S. 399 (1964) (striking down state law that required a candidate's race be listed on the ballot).

These equal protection cases considered whether the law itself violated the equal protection clause in treating persons different based on certain classifications. That is not an issue in this case. Plaintiffs have not challenged the monument protection law itself. For

those reasons, this equal protection jurisprudence provides no helpful guidance on whether Plaintiffs have pleaded that Tyrrell County acted with discriminatory intent.

Other cases cited by Plaintiffs involved challenges to discretionary decisions made by a local government. *See e.g., Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) (plaintiff alleged that the city denied its free speech rights when the city refused its request to install a monument in a park). These cases are not helpful because Tyrrell County does not have discretion. It must follow state law. *Alamance County*, 900 S.E.2d at 229.

Other cases cited by Plaintiffs are irrelevant because they involve totally different legal issues than those in play here, (*Occupy Columbia v. Haley*, 738 F.3d 107) (4th Cir. 2013) (allegations that a governor's order to remove protestors without a time, place, or manner regulation violated the first amendment), off-point questions about the relationship between state and federal law (*Martinez v. State of Cal.*, 444 U.S. 277 (1980)) (state's effort to immunize its officials from liability under federal law), or inapposite procedural questions. (*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.,* 373 U.S. 668 (1963) (relief under the Civil Rights Act cannot be denied because a plaintiff fails to exhaust administrative remedies under state law). These various concepts have nothing to do with whether Tyrrell County acted with discriminatory intent.

***

Plaintiffs attempt to reconcile this assorted case law as endorsing the novel theories they have advanced in this case. They argue that *Hunter* and *Arlington Heights* suggest that discriminatory intent is judged from the standpoint of the officials who first displayed the message. In this case, those officials would be Tyrrell County decisionmakers in 1902. This argument cannot be reconciled with the pleaded facts or the controlling law. For starters, Plaintiffs allege that they have tried to persuade Tyrrell County to remove the monument,

and the county has declined. (DE 19, ¶¶ 34-36) This decisionmaking sparked the lawsuit, not the monument's dedication 122 years ago.

More important, this argument is just another attempt to avoid the monument protection law. In *Hunter* and *Arlington Heights*, the Supreme Court was asked to decide whether a state constitutional provision and a municipal ordinance violated the equal protection clause. The historical record helped the Court judge the intent behind the respective laws at issue. No such analysis is required here. It does not matter what Tyrrell County intended in 1902 because the General Assembly has said that the county has no legal right to control the monument now. This truth, however frustrating it may be to Plaintiffs, means that Tyrrell County has not acted with discriminatory intent when it has followed state law. As such, Plaintiffs have not pleaded a 42 U.S.C. § 1983 fourteenth amendment equal protection violation, or a 42 U.S.C. § 1982 violation.

## Conclusion

In the end, Plaintiffs have not cited a single case – not one – where a federal appellate court has held that a local government may act with discriminatory intent when it follows a state law that is valid and constitutional.

The General Assembly has said that counties cannot remove their Confederate monuments. The North Carolina Court of Appeals has ruled that counties are bound by this statute, and that counties who are bound by this statute are not motivated by a discriminatory intent. Whether the monument protection law is good policy is a legislative choice. But Tyrrell County should not be subject to liability based on its decision to follow state law. Plaintiffs' lawsuit should be dismissed.

This the 12th day of November, 2024.

CRANFILL SUMNER LLP

BY: <u>/s/ Steven A. Bader</u>
STEVEN A. BADER
State Bar No. 55931
E-mail: sbader@cshlaw.com
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919-828-5100

PATRICK H. FLANAGAN
N.C. State Bar No. 17407
Email: phf@cshlaw.com
Post Office Box 30787
Charlotte, NC 28230
Telephone: (704) 332-8300

*Attorney for Defendant*

CERTIFICATE OF SERVICE

   I hereby certify that on November 12, 2024, I electronically filed the foregoing *Reply in Support of Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to counsel of record:

           Jaelyn D. Miller
           Ian M. Mance
           Emancipate NC
           P.O. Box 309
           Durham, NC 27702
        Email: jaelyn@emancipatenc.org
        Email: ian@emancipatenc.org
          *Attorneys for Plaintiff*


          CRANFILL SUMNER LLP

  BY:  /s/ Steven A. Bader
      STEVEN A. BADER
      N.C. State Bar No. 55931
      E-mail: sbader@cshlaw.com
      Post Office Box 27808
      Raleigh, North Carolina 27611-7808
      Telephone: 919-828-5100

      PATRICK H. FLANAGAN
      N.C. State Bar No. 17407
      Email: phf@cshlaw.com
      Post Office Box 30787
      Charlotte, NC 28230
      Telephone: (704) 332-8300

      *Attorneys for Defendant*