IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-CV-26-D

| | |
|---|---|
| JOYCE SYKES FITCH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TYRELL COUNTY, ) | |
| ) | |
| Defendant. ) | |

On May 21, 2024, Joyce Sykes Fitch, Mark Mixon, Sherryreed Robinson, and Adriana Blakeman, individually and as members of The Concerned Citizens of Tyrell County (collectively "Concerned Citizens" or "plaintiffs"), filed a complaint against Tyrell County, North Carolina ("Tyrell County" or "defendant") and several Tyrell County officials [D.E. 1]. On September 9, 2024, Tyrell County moved to dismiss the complaint for failure to state a claim [D.E. 12]. See Fed. R. Civ. P. 12(b)(6).

On September 25, 2024, Concerned Citizens filed an amended complaint and dropped the Tyrell County officials from the action [D.E. 19]. In its amended complaint, Concerned Citizens alleges: (1) an equal protection claim under 42 U.S.C. § 1983 and the Fourteenth Amendment, and (2) an equal-right-to-hold-property claim under 42 U.S.C. § 1982. See Am. Compl. [D.E. 19] ¶¶ 44–105. The amended complaint challenges a 1902 monument adjacent to the Tyrell County courthouse commemorating Confederate veterans of the Civil War. See id. at ¶¶ 1, 13. The monument includes an engraving that reads, "in appreciation of our faithful slaves." Id. at ¶ 14. Plaintiffs seek declaratory and injunctive relief that would require Tyrell County to remove or cover the reference to "faithful slaves" on the monument. See id. at ¶ 69.

On October 9, 2024, Tyrell County moved to dismiss the amended complaint for failure to state a claim [D.E. 20] and filed a memorandum in support [D.E. 21]. See Fed. R. Civ. P. 12(b)(6). On October 28, 2024, Concerned Citizens responded in opposition [D.E. 24]. On November 12, 2024, Tyrell County replied [D.E. 25]. As explained below, the court denies as moot Tyrell County's motion to dismiss the complaint, denies in part and grants in part Tyrell County's motion to dismiss the amended complaint, and dismisses with prejudice Concerned Citizens's section 1982 claim.

I.

This case concerns a 122-year-old monument in Tyrell County, North Carolina. See Am. Compl. ¶ 16. Around the turn of the 20th century, a group of Tyrell County residents, in cooperation with Tyrell County officials, secured private funds to commission a monument to commemorate Confederate veterans of the Civil War. See id. at ¶¶ 18–21. Sometime before August 7, 1902, craftsmen finished the monument. See id.

The monument is a statue of a Confederate soldier standing atop an upright rectangular pedestal covered by stone panels on each side. See id. at ¶ 14. Engravings and iconography concerning the efforts of Tyrell County residents who served the Confederacy in the Civil War fill each stone panel. See id. at ¶¶ 14, 24 n.7. One panel bears an engraving that reads, "in appreciation of our faithful slaves." Id. at ¶ 14.

On August 7, 1902, Tyrell County officials held a ceremony to formally accept and install the monument in downtown Columbia, North Carolina. See id. at ¶¶ 15, 22. "[M]ultiple" Tyrell County officials attended the ceremony. See id. at ¶ 23. Mark Majette, a local attorney "who served in a variety of government capacities," delivered an acceptance speech to several thousand people. Id. at ¶¶ 22–23. The daughter of the Tyrell County Register of Deeds unveiled the

2

monument. See id. at ¶ 24. In 1903, Tyrell County officials opened the building adjacent to the monument as the Tyrell County courthouse. See id. at ¶ 15.

Over the next 122 years, the Tyrell County courthouse became one of the oldest functioning courthouses in North Carolina. See id. at ¶ 16. The monument has remained adjacent to the courthouse. According to plaintiffs, this is the only monument on courthouse grounds in the United States that expresses a message "purporting to celebrate 'Faithful' or 'Loyal Slaves.'" Id. at ¶ 26.

On May 21, 2024, Concerned Citizens sued Tyrell County. See [D.E. 1]. Concerned Citizens is "a dues-paying membership group predominately comprised of elderly Black residents from [Tyrell County]." Am. Compl. ¶ 34. For years, Concerned Citizens has advocated for Tyrell County officials to remove the "faithful slaves" engraving from the courthouse grounds. See id. at ¶¶ 34–36. In its amended complaint, Concerned Citizens alleges: (1) an equal protection claim under 42 U.S.C. § 1983 and the Fourteenth Amendment, and (2) an equal-right-to-hold-property claim under 42 U.S.C. § 1982. See id. at ¶¶ 44–105. Specifically, Concerned Citizens "challenges Tyrrell County's public, textual expression of appreciation for 'Faithful Slaves' and nothing more." Id. at ¶ 4. Concerned Citizens seeks declaratory and injunctive relief that would require Tyrell County to remove or cover the reference to "faithful slaves" on the monument. See id. at ¶ 29.

II.

Tyrell County moves to dismiss Concern Citizens's amended complaint. See [D.E. 20]. A motion to dismiss under Rule 12(b)(6) tests the amended complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S.

3

30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the [amended] complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the [amended] complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event

4

of conflict between the bare allegations of the [amended] complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts. Ltd., 551 U.S. 308, 322 (2007); Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

III.

A.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180; N. Carolina All. for Retired Americans v. Hirsch, 741 F. Supp. 3d 318, 334 (E.D.N.C. 2024). A section 1983 plaintiff must also plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); Hirsch, 741 F. Supp. 3d at 334.

County governments are "persons" under section 1983. See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403–04 (1997); Monell, 436 U.S. at 691 n.55; Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 690 (E.D.N.C. 2010). When suing a county, a plaintiff must plausibly allege that a policy or custom attributable to that county caused the violation of the plaintiff's federally protected rights. See Brown, 520 U.S. at 403–05; Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725

5

F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). "Monell's policy or custom requirement applies in [section] 1983 cases irrespective of whether the relief sought is monetary or prospective." Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29, 39 (2010). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff can "identify conduct attributable to the municipality." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

6

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) abrogated on other grounds by Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

Plaintiffs allege an Equal Protection Clause violation against Tyrell County under 42 U.S.C. § 1983 and the Fourteenth Amendment. See Am. Compl. ¶¶ 44–91. Plaintiffs cite Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977), and contend that Tyrell County installed the "faithful slaves" engraving in 1902 with discriminatory intent against black people. See id. at ¶ 70 n.38.

An equal protection claim under the Fourteenth Amendment requires a plaintiff to show that the challenged government action has "a racially disproportionate impact" and is "motivated by an invidious discriminatory intent." Coal. for TJ v. Fairfax Cnty. Sch. Bd., 68 F.4th 864, 883, 886 (4th Cir. 2023); see City of Memphis v. Greene, 451 U.S. 100, 119 (1981); Arlington Heights, 429 U.S. at 264–65; Washington v. Davis, 426 U.S. 229, 242 (1976); Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Coleman v. Miller, 117 F.3d 527, 529 (11th Cir. 1997) (per curiam).

"Proving the motivation behind official action is often a problematic undertaking." Hunter v. Underwood, 471 U.S. 222, 228 (1985). Additional difficulties arise when analyzing the motives of multi-member bodies such as Congress, state legislatures, or county commissions. See id.; Rogers v. Lodge, 458 U.S. 613, 618–27 (1982); United States v. O'Brien, 391 U.S. 367, 383–84

7

(1968). In Arlington Heights, however, the Court provided a non-exhaustive list of factors to assist courts in analyzing the intent behind official acts, including

> the historical background of the challenged decision; the specific sequence of events leading up to the challenged decision; departures from normal procedural sequence; the legislative history of the decision; and of course, the disproportionate impact of the official action—whether it bears more heavily on one race than another.

N. Carolina State Conf. of NAACP v. McCrory, 831 F.3d 204, 220–21 (4th Cir. 2016) (cleaned up); see Arlington Heights, 429 U.S. at 266–68. A court may consider historical studies, expert testimony, and contemporaneous records in weighing these factors. See, e.g., Hunter, 471 U.S. at 229; Arlington Heights, 429 U.S. at 266–67.

"[P]revailing on the merits of a Monell claim is difficult, [but] simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. As for Monell liability, plaintiffs plausibly allege that Tyrell County acted as a final decisionmaker in 1902 when it installed the "faithful slaves" engraving. See Pembaur v. City of Cincinnati, 475 U.S. 469, 485 (1986); Jackson v. City of Stone Mountain, 232 F. Supp. 2d 1337, 1364–66 (N.D. Ga. 2002).

As for the underlying equal protection claim, plaintiffs plausibly allege that the "faithful slaves" engraving has a racially disproportionate impact on black residents of Tyrell County. See Arlington Heights, 429 U.S. at 264–65; Washington, 426 U.S. at 242; Williams, 326 F.3d at 576; Morrison, 239 F.3d at 654. Tyrell County provides no contrary argument. See [D.E. 21] 4–15; [D.E. 25] 3–7. Plaintiffs also plausibly allege that an invidious discriminatory intent motivated Tyrell County to install the "faithful slaves" engraving in 1902. See Arlington Heights, 429 U.S. at 264–65; Washington, 426 U.S. at 242; Williams, 326 F.3d at 576; Morrison, 239 F.3d at 654.

In opposition, Tyrell County cites North Carolina State Conference of National Association for the Advancement of Colored People v. Alamance County, 293 N.C. App. 107, 900 S.E.2d 224

(2024). There, the North Carolina N.A.A.C.P. brought an equal protection challenge against the Alamance County Commission's decision to "not relocat[e]" a Confederate Civil War monument. Alamance Cnty., 293 N.C. App. at 113, 900 S.E.2d at 229. The North Carolina Court of Appeals held that a county commission had no power to relocate Confederate Civil War monuments under North Carolina's Monument Protection Law. See id. Here, plaintiffs challenge "Tyrrell County's public, textual expression of appreciation for 'Faithful Slaves' and nothing more." Am. Compl. ¶ 4. Alamance County does not bar Tyrell County from covering or altering the "faithful slaves" engraving, which is plaintiffs' requested relief. Thus, Alamance County does not help Tyrell County.

Plaintiffs plausibly allege their equal protection claim. Whether plaintiffs' claim will survive summary judgment is a question for another day. See, e.g., Coleman, 117 F.3d at 529–31 (affirming summary judgment to Georgia on equal protection challenge to confederate insignia on Georgia state flag); N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1562–64 (11th Cir. 1990) (affirming summary judgment to Alabama on equal protection challenge to Alabama's decision to fly a confederate flag at the state capitol); Daniels v. Harrison Cnty. Bd. of Supervisors, 722 So. 2d 136, 139 (Miss. 1998) (affirming summary judgment for county board because there was "no indication that the flying of the single Confederate Flag [on a public beach] serves to deprive any citizens of this State of any constitutionally protected right."). Thus, the court denies defendants' motion to dismiss plaintiffs' equal protection claim.

B.

Plaintiffs also allege an equal-right-to-hold-property claim against Tyrell County under 42 U.S.C. § 1982. See Am. Compl. ¶¶ 92–105. Section 1982 provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982. Section 1982 guarantees "continuous equality between white and nonwhite citizens with respect to the rights in question." Jam v. Int'l Fin. Corp., 586 U.S. 199, 208 (2019); see Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 336 (2020). The rights in question concern "the ownership of property." CBOCS W., Inc. v. Humphries, 553 U.S. 442, 446 (2008); see Comcast Corp., 589 U.S. at 336; Jam, 586 U.S. at 208; Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 348 (4th Cir. 2013); Wright v. Salisbury Club, Ltd., 632 F.2d 309, 314–16 (4th Cir. 1980). These rights include the "right to inherit, purchase, lease, sell, hold, and convey real and personal property." Painter's Mill, 716 F.3d at 348 (cleaned up); see Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 236 (1969) abrogated on other grounds as recognized in Ziglar v. Abbasi, 582 U.S. 120, 132 (2017); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437–44 (1968); Wright, 632 F.2d at 314–16. When alleging an equal-right-to-hold-property claim, however, a plaintiff must plausibly allege impairment of a personally held property interest. See, e.g., Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 616–17 (1987); Greene, 451 U.S. at 122 n.35, 123–24; Sullivan, 396 U.S. at 236–37; Watts v. Joggers Run Prop. Owners Ass'n, Inc., 133 F.4th 1032, 1045–46 (11th Cir. 2025); Painter's Mill, 716 F.3d at 348–49; United States v. Brown, 49 F.3d 1162, 1167 (6th Cir. 1995); Southend Neighborhood Imp. Ass'n v. St. Clair Cnty., 743 F.2d 1207, 1211 (7th Cir. 1984); Wright, 632 F.2d at 314–16.

"Property interests, of course, are not created by the Constitution." The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Moreover, "[a] property interest does not exist solely because of the importance of the benefit to the recipient." Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir.1991); see Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982);

10

see Roth, 408 U.S. at 577; Strickland v. United States, 32 F.4th 311, 348 (4th Cir. 2022). A "unilateral expectation" does not create a property interest. Roth, 408 U.S. at 577. "The hallmark of property . . . is an individual entitlement grounded in state law." Logan, 455 U.S. at 430; see Roth, 408 U.S. at 577; Strickland, 32 F.4th at 348; O'Rourke, 930 F.2d at 175; Camden Cnty. v. Ne. Cmty. Dev. Corp., 263 F. Supp. 3d 556, 563 (E.D.N.C. 2017).

Section 1982's "threshold inquiry . . . must focus on the relationship between the allegedly wrongful activity and the property interest of the complaining parties." Southend Neighborhood, 743 F.2d at 1211 (cleaned up); see Greene, 451 U.S. at 123. And the alleged impairment of a plaintiff's property interest "must amount to more than an inconvenience." Southend Neighborhood, 743 F.2d at 1212; see Greene, 451 U.S. at 120–24. Furthermore, the alleged impairment must have more than "a minimal effect." Southend Neighborhood, 743 F.2d at 1212; see Greene, 451 U.S. at 120–24.

Plaintiffs argue that section 1982 protects the "use" of property. See Am. Compl. ¶¶ 92–105; [D.E. 24] 13–17. The Fourth Circuit has not addressed this issue. The court, however, need not resolve whether section 1982 protects the "use" of property because plaintiffs fail to plausibly allege that Tyrell County impaired a personally held property interest of Concerned Citizens or its members.

The United States Supreme Court has only recognized equal-right-to-hold-property claims where a plaintiff has plausibly alleged that a defendant has impaired a plaintiff's personally held property interest. See Cobb, 481 U.S. at 616–17 (impairment of synagogue ownership); Greene, 451 U.S. at 123 (impairment of residential property ownership); Sullivan, 396 U.S. at 236–37 (impairment of leasehold). As the Fourth Circuit explained in Painter's Mill, section 1982 "protects only the right to inherit, purchase, lease, sell, hold, and convey real and personal property

11

on one's own behalf." Painter's Mill, 716 F.3d at 348 (quotation omitted) (emphasis in original); cf. Wright, 632 F.2d at 314–16. Other courts interpret section 1982 to require the same thing. See, e.g., Watts, 113 F.4th at 1045–46 (impairment of HOA benefits); Brown, 49 F.3d at 1167 (impairment of congregation's "viable property interest"); Southend Neighborhood, 743 F.2d at 1208–12 (impairment of real property values). Plaintiffs fail to plausibly allege that the "faithful slaves" engraving impairs any property interest owned by Concerned Citizens or its members. See Greene, 451 U.S. at 124; Painter's Mill, 716 F.3d at 348–49; Southend Neighborhood, 743 F.2d at 1212. Moreover, plaintiffs fail to plausibly allege that they own a personally held property interest in the courthouse grounds. Cf. Soc'y for the Hist. Pres. of the Twenty-Sixth N. Carolina Troops, Inc. v. City of Asheville, 385 N.C. 744, 748–52, 898 S.E.2d 760, 763–66 (2024); United Daughters of the Confederacy v. City of Winston-Salem ex rel. Joines, 383 N.C. 612, 630, 881 S.E.2d 32, 47 (2022) Indeed, the amended complaint appears to allege that Tyrell County owns the courthouse grounds in fee simple. See Am. Compl. ¶¶ 15–18. Thus, plaintiffs fail to plausibly allege their equal-right-to-hold property claim.

Alternatively, plaintiffs fail to plausibly allege sufficient interference. In City of Memphis v. Greene, 451 U.S. 100 (1981), black property owners challenged the city's decision to close a road under an equal-right-to-hold-property theory. Id. at 123. The road closure "inconvenienced" black property owners and required "that one public street rather than another must be used for certain trips within the city." Id. at 110–112, 124. The Court noted this "inconvenience," but held that the road closure "does not involve any impairment to the kind of property interests that we have identified as being within the reach of [section] 1982." Id.

Similarly, in Southend Neighborhood Improvement Association v. St. Clair County., 743 F.2d 1207 (7th Cir. 1984), black property owners challenged a county's failure to improve

12

dilapidated county property under an equal-right-to-hold-property theory. See id. at 1210–12. There, the county seized, and then failed to maintain, dilapidated tax delinquent properties in predominantly black neighborhoods. See id. at 1208. The property owners alleged that the county interfered with their property values by failing to improve, board-up, or demolish the tax delinquent properties. See id. at 1210–12. The court held that the county's inaction only had "a minimal effect" on the property owners' rights and that "those injuries do not rise to the level necessary to constitute a statutory violation." Id. at 1212. Moreover, the court observed that the "causal nexus . . . between the inaction toward disrepair on one lot and the alleged effects on neighboring lots [was] unsubstantial." Id.

Here, plaintiffs contend that they are "demoralize[ed]" and "stigmatiz[ed]" by the "faithful slaves" engraving because it is a "physical badge of slavery." Am. Compl. ¶ 98–102. Plaintiffs, however, fail to plausibly allege that these harms rise to "more than an inconvenience" or have more than a "minimal effect" on their hypothetical property interests. Greene, 451 U.S. at 124; Southend Neighborhood, 743 F.2d at 1212.

Plaintiffs also contend that the unruly conduct of an armed protestor at one of their meetings concerning the "faithful slaves" engraving impaired their hypothetical property interests. See Am. Compl. ¶¶ 103–05. The "causal nexus," however, between an isolated protest and Tyrell County's display of the "faithful slaves" engraving is far too attenuated. See, e.g., Southend Neighborhood, 743 F.2d at 1211.

Plaintiffs fail to plausibly allege an equal-right-to-hold-property theory. As the Seventh Circuit observed in Southend Neighborhood:

> This is not a case where the plaintiffs were denied the right to buy or sell property, lease an apartment, join a club, enter a contract, or accept terms or prices imposed on them because of their race. Nor is this a case where the County has refused discriminatorily to extend available services to blacks. Instead of these direct

13

incidents of discrimination, this case involves only the effect on residents of the County's decisions . . . .

Id. at 1211–12. An equal-right-to-hold-property theory requires a plaintiff to plausibly allege a personally held property interest and impairment of that property interest. See Comcast Corp., 589 U.S. at 336; Humphries, 553 U.S. at 446; Jam, 586 U.S. at 208; Cobb, 481 U.S. at 616–17; Greene, 451 U.S. at 123; Sullivan, 396 U.S. at 236–37; Painter's Mill, 716 F.3d at 348; Wright, 632 F.2d at 314–16. Because plaintiffs have done neither, plaintiffs' section 1982 claim fails. Accordingly, the court grants in part defendants' motion to dismiss the amended complaint and dismisses with prejudice plaintiffs' section 1982 claim.

C.

Tyrell County argues that it is entitled to legislative immunity because Tyrell County acted in a legislative capacity when making decisions about the "faithful slaves" engraving. See [D.E. 21] 15. No. Individual legislators, not legislative bodies writ-large, have immunity for their legislative acts. See, e.g., Tenney v. Brandhove, 341 U.S. 367, 376–79 (1951); Whitener v. McWatters, 112 F.3d 740, 742 (4th Cir. 1997); Alexander v. Holden, 66 F.3d 62, 65 (4th Cir. 1995); Chase v. Senate of Virginia, 539 F. Supp. 3d 562, 569 (E.D. Va. 2021).

Tyrell County also argues that it has derivative legislative immunity. See [D.E. 21] 15. According to Tyrell County, decisions concerning the "faithful slaves" engraving are subject to "local legislative powers" and deserve vicarious legislative immunity Id. The Fourth Circuit squarely rejected this argument three decades ago. See Berkley v. Common Council of City of Charleston, 63 F.3d 295, 296 (4th Cir. 1995) (en banc). Thus, Tyrell County is not entitled to derivative legislative immunity.

14

III.

The court DENIES AS MOOT defendant's motion to dismiss the complaint [D.E. 12], GRANTS IN PART defendant's motion to dismiss the amended complaint [D.E. 20], and DISMISSES WITH PREJUDICE plaintiffs' section 1982 claim. Plaintiffs' equal protection claim survives.

SO ORDERED. This 7 day of May, 2025.

JAMES C. DEVER III
United States District Judge